In ejectment, the plaintiff claimed title under a deed from *A* to *B*, dated *Februa-ry* 12th, 1830, giving a description of the land conveyed, by boundaries, and then adding this further description " being the same lot of land I purchased of *C*, as per his deed on record, dated *February* 12th, 1830, will appear, and to which deed, recorded in book    on page    of said records, reference may be had." It appeared, that the demanded premises had been previously conveyed to *A*, by a deed from *C*, dated *August* 13th, 1829; but no deed from *C* to *A* of any other date was produced, or shown to have had existence. The defendant claimed and prayed the court to instruct the jury, first, that the reference in the deed from *A* to *B* must be regarded as a nullity ; and secondly, that the parties to the deeds did not *intend* to include in them the demanded premises. The court, however, submitted the case to the jury upon the gen-eral question, whether by virtue of said deeds the plaintiff acquired a title to the demanded premises. Held, 1. that the circumstances of the case disclos-ed a mistake of the scrivener who drew the deed from *A* to *B*, by substituting, in the reference, the date of *that* deed, for the date of the deed from *C* to *A* ; 2. that as the mistake did not vary the effect of the deed, there was no need of the aid of a court of chancery, to correct it; 3. that the case was properly submitted to the jury.

THIS was an action of ejectment; tried at *New-London, September* term 1845, before *Waite,* J.

The material facts in the case are these. *John Lewis,* from whom the plaintiff claimed title, made, in 1799, a contract with *Samuel Green* for the purchase of a certain tract of land, situated in the city of *New-London.* In 1801, he purchased of *Jared Starr* a small strip of land, the demanded premises, adjoining the *Green* land upon the *South-Easterly* side ; and two years afterwards, he received from *Green* a conveyance of his land. In the year 1808, *Lewis,* being the owner of both pieces, lying together, conveyed to *Caleb Gillet* " a certain lot of land," giving the boundaries of it, but in such a manner as to render it doubtful from them alone, whether they in-cluded both pieces, or only the *Green* land. But all doubt on that subject was removed, by another clause in the deed, stating that it was the same lot of land that he purchased of *Green* and *Starr.* *Gillet* subsequently conveyed the same lot to *Jacob Holmes ; Holmes* to *Leonard H. Bulkley ;* and *Bulk-ley,* by deed bearing date *August* 13th, 1829, reconveyed it to *Holmes.* The language used in describing the lot, in all these deeds, is very similar. On the 12th of *February,* 1830, *Holmes* executed a deed to *Matthias W. Baker,* giving the

boundaries and description of the lot as in the preceding deeds, *New-London,*
but further describing it as " being the same lot of land I *July, 1846.*
purchased of *Leonard H. Bulkley*, as *per* his deed on record,
dated *New-London*, *February* 12th, 1830, will fully appear,
and to which deed, recorded in book      on page      of said
records, reference may be had." *Baker*, in *March*, 1831,
conveyed the premises to the plaintiff.

*Tyrrell
v.
Comstock.*

No deed from *Bulkley* to *Holmes*, bearing date *February*
12th, 1830, was produced ; nor was there any evidence tend-
ing to show that any such deed had ever been given, except
the reference above stated in the deed to *Baker;* nor that any
other deed was ever given by *Bulkley* to *Holmes*, except that
of *August* 13th, 1829.

The defendant claimed, that as no deed had been produced
of the date referred to in that from *Holmes* to *Baker*, the ref-
erence must be regarded as a nullity, and could not be taken
into consideration by the jury, in determining whether the
latter deed embraced the demanded premises ; and he prayed
the court so to instruct the jury. He further claimed, and
offered evidence to prove, that the parties to said deeds did
not in fact intend to include in them the demanded premises ;
and that if the jury were satisfied, that such was the intent of
the grantors, their verdict must be in his (the defendant's)
favour.

The court did not instruct the jury in conformity to these
claims, but submitted the question, whether by virtue of said
deeds, the plaintiff had acquired title to the demanded prem-
ises.

The jury returned a verdict for the plaintiff ; and the de-
fendant moved for a new trial for a misdirection.

*Foster* and *Lippitt*, in support of the motion, after remark-
ing, that in ejectment the plaintiff must prove title ; (1 *Sw.
Dig.* 507.) contended, 1. That in this case, the plaintiff must
fail to establish her title, unless the deed from *Bulkley* to
*Holmes* of *August* 13th, 1829, can be regarded as a part of
the deed from *Holmes* to *Baker*.

2. That if a party would avail himself of a reference, he
must produce the document referred to, or prove its loss and
give evidence of its contents. 1 *Stark. Ev.* 173. Here, the
deed referred to was not produced ; nor was there any proof

of its loss.   A mistake in a deed, if there was one in this, cannot be proved at law ; a court of equity alone being competent to furnish such relief.   But no evidence was offered to show a mistake.

3. That in the absence of the deed referred to, without proof of loss or mistake, the jury should have been instructed, that the reference should be regarded as a nullity.

4. That if the intention of the parties can be ascertained from the deeds alone, the court erred in leaving the question whether the plaintiff thereby acquired a title to the demanded premises, to the jury, to be determined by them from extrinsic evidence.

*Strong* and *Crump,* contra, insisted, 1. That the description in the deeds under which the plaintiff claims title, independently of the reference in the deed from *Holmes* to *Baker,* was sufficient to include the demanded premises.

2. That if any aid from that reference was needed, it must be considered as pointing to the deed from *Bulkley* to *Holmes* of *August* 13th, 1829, the date specified in the reference being rejected as incongruous.   This deed from *Bulkley* to *Holmes* unquestionably embraced the demanded premises.

3. That if there still remained any doubt as to the application of the description to the demanded premises, that doubt is now removed, by the finding of the jury.

WAITE, J.   The deed from *Holmes* to *Baker,* would most effectually have conveyed the demanded premises, had there been no reference to the *date* of the deed from *Bulkley.*   The preceding deeds clearly show, that before the execution of that deed, the property had been conveyed to *Holmes ;* and that too, by a deed from *Bulkley.*   The only difficulty arises from the recital of the date of the latter deed.   The boundaries and description are substantially the same as in all the prior conveyances from *Lewis* down to *Holmes,* embracing a period of more than twenty years.

The deed from *Lewis* describes it as being " a certain lot," although it originally was composed of two parcels ; and that description runs through all the conveyances.   Does then the erroneous reference to the date of *Bulkley's* deed impair what would otherwise clearly be the effect of the deed?

There would perhaps be more difficulty in the case, were there no other description given than a simple reference to a deed of a particular date. In such case, it might be difficult to say what particular tract was intended. But here we have not only a reference to the grantor's deed, but the boundaries given. Not so fully, however, as to render it certain from them, that the demanded premises were included ; but taken in connexion with other parts of the deed, and the language used in all former conveyances of the same property, no reasonable doubt can be entertained as to the proper construction. The land intended to be conveyed, was " a certain lot" purchased of *Bulkley*—not *a part* of that lot ; and the preceding conveyances show what that lot embraced.

It is said, that the reference to a deed of a particular date is *prima facie* evidence of the existence of such a deed. This is undoubtedly true. But that evidence may be rebutted, by showing that in fact no such deed ever existed ; or circumstances from which that inference may be satisfactorily drawn. Here no deed of the date mentioned is produced,— but a deed from *Bulkley* to *Holmes,* dated in the preceding year, conveying this precise property to *Holmes.* To enable *Bulkley* again to convey it, by a subsequent deed, there must have also been another deed from *Holmes* to *Bulkley,* of the existence of which there was no evidence.

There are circumstances in the case, indicative of a mistake on the part of the scrivener who drew the deed. The reference is to a deed of the same date as the one in which the reference was made. It is referred to as a deed recorded, and the number of the book and the page are left blank.

It is further said, that in relation to the deed referred to, the burden of proof is upon the plaintiff: she must show her title, and prove her case. This is also true. But it is enough for her to show such facts and circumstances as will satisfy the minds of the triers, that no such deed ever existed. This, we think, was done, in the present case. The defendant might then rebut this testimony, by the actual production of the deed in question. This he did not do.

Again, it is said, that if here were a mistake, the remedy is only in a court of chancery for the correction of that mistake. This would be so, if the mistake gave effect to the deed different from that claimed by the plaintiff. If the mistake were

*New-London,*
*July, 1846.*

Tyrrell
*v.*
Comstock.

such as not to embrace in the deed the land in question, so that as to that her chain of title was broken, it would be necessary for her to have recourse to a court of chancery. But here, the plaintiff claims the mistake does not alter or change the effect of the deed ; that the construction is the same as if the reference had been made, in so many words, to the deed of the 13th of *August*, 1829. If this is true, then she has no need of the aid of a court of chancery.

It is finally insisted, that the court erred in not properly submitting to the jury the question as to what the parties in fact *intended.* But that intent can only be ascertained from the language used in the deed, and not from extrinsic evidence. Had the parties actually intended to convey the *Starr* lot, and failed to use the necessary language for that purpose, no title would have passed. So if they meant to convey but one parcel, and the language used embraced both, the title to both would have passed. The express language of the deed could not be controuled, in a court of law, by extrinsic evidence as to the actual intent of the parties.

Upon the whole, we see no reason for disturbing the verdict in this case.

In this opinion the other Judges concurred.

New trial not to be granted.