According to the stipulation of facts, the parties entered into a contract for the sale of certain real estate in the town of Salem. Under the terms of the contract the defendant seller agreed to convey the property by a good and sufficient warranty deed. The plaintiff buyers agreed to furnish to their mortgagee a certificate of title certifying *Page 508 
that the title to the property was free and clear of all encumbrances. Nothing was to be considered an encumbrance which is not so considered by the standards of title of the Connecticut Bar Association. The parties also agreed to share the expenses of a perimeter survey of the property. The sale was not closed because the plaintiffs claimed that the defendant's title to the property was unmarketable.
The dispute in this case revolves around a 1935 deed of the property in question from Oliver C. Gardner, Louise J. Gardner, Elizabeth A. Kempton, Arthur W. Kempton, Sarah G. Wolff, J. Lee Gardner, Elsie Gardner Hewitt, Effie Gardner Clark, and Henrietta McNaught to Paul Massey. This deed contains a recital that the transferors are "all and the only persons having an interest in the premises hereinafter described, by the operation of the law of descent, grant and will which was formerly set out to Sarah Chapman Gardner and now owned by the heirs and descendants and devisees of descendants . . . ." There is no record in the land records of the town of Salem of any transfer of ownership by conveyance, by will, or by the laws of intestate succession from any transferor to any of the transferors in the Paul Massey deed.
Sarah Chapman Gardner died intestate in 1894. She was survived by six children, namely, Oliver, Louise, Hester, Willis, Leander, and Addison. Hester had four children, Elizabeth A. Kempton, Arthur W. Kempton, Sarah G. Wolff, and Harley Kempton. Harley Kempton died prior to 1927 a widower and childless. Willis had three children, J. Lee Gardner, Elsie Gardner Hewitt, and Effie Gardner Clark. Leander had one child who died in 1891. Leander died at Groton, the date of his death unknown. Addison, who married Jennie McNaught, had no children. He died at Norwich, *Page 509 
the date of his death unknown. His estate was probated in the Norwich Probate District. The stipulated facts do not disclose whether Addison died testate or intestate. Henrietta McNaught is the niece of Jennie McNaught, Addison's wife.
Standard No. 64 of the standards of title of the Connecticut Bar Association provides as follows: "Problem: The owner of real estate dies, after which there appear of record one or more quit claim deeds from parties of whom one or more bear the same surname as the decedent, but there is no statement in the deeds as to the portion of interest conveyed or that the grantors are all of the heirs of the decedent. There is no record proof that the grantors are all of the heirs. Can we adopt some arbitrary period after which we will presume that all of the heirs have joined in such conveyance?
"Recommendation: It is recommended that the question be answered in the negative."
The trial court found that the statements in the Paul Massey deed are sufficient records of the descent of title to the land in question from Sarah Chapman Gardner to the releasors to meet the requirements of standard No. 64, and that the chain of title to the subject premises does not contain such a gap as would render the title unmarketable.
We begin our discussion by putting to rest the standard of title rabbit which appears to have led the parties into irrelevant intellectual pursuits. Standard No. 64 is not applicable to the present case because first, under the contract of sale the standards are dispositive only in disputes involving claimed encumbrances and not in those concerning claimed defects in title; second, the standard does not address the problem of the validity vel non of *Page 510 
deeds containing certain recitals; and third, the standard concerns itself with the limited problem of intestate distribution, whereas the Massey deed involves not only heirs but devisees and possibly grantees as well.
The parties are in agreement that questionable encumbrances are to be resolved by reference to the standards of title. An encumbrance has been defined to mean "`every right to or interest in land which may subsist in third persons, to the diminution of the value of the land, but consistent with the passing of the fee by the conveyance . . . .'" Kelsey v. Remer, 43 Conn. 129, 138; see Aczas v. Stuart Heights, Inc., 154 Conn. 54, 60. Under that definition a distinction must be drawn between an encumbrance and a defect in title. The problem in this case involves the latter. Although the standards, insofar as they establish the custom in the legal community, might be helpful in cases other than those involving encumbrances, in such cases they are not controlling, contractually or otherwise.
Standard No. 64 deals with a limited factual problem. The question simply put is when could it be presumed that certain grantors were the only heirs of a deceased predecessor in title. To pose the problem in its pristine form it was necessary to exclude certain factors. It does not follow from this that the presence of one or more of those factors necessarily resolves the problem of marketability of title. A single example will suffice: A, the owner of real estate, dies. He is survived by B, his only heir. After A's death B conveys the real estate to C by quitclaim deed in which he recites that he is the only heir of A and it is the intention of the deed to convey all of A's interest in this real estate. C enters into a contract with D for the sale of the real estate. The contract contains a provision wherein C agrees to convey by a good and sufficient *Page 511 
warranty deed and also a provision that nothing shall be considered an encumbrance unless it is so considered by the standards of title of the Connecticut Bar Association. Shortly thereafter, but before the closing and before the estate is settled, A's will is discovered and admitted to probate. In this will A devises his real estate to X, his favorite nephew. Under this set of facts would the defendant seriously contend that C's title was marketable? The answer is obvious.
 II
To understand the scope of the problem presented by the Massey deed a brief historical analysis of recitals in deeds is required. One of the oldest exceptions to the hearsay rule involves statements relating to pedigree. The difficulty with utilizing that exception is that it requires that the declarant be dead or otherwise unavailable. Ferguson v. Smazer, 151 Conn. 226, 230; Shea v. Hyde, 107 Conn. 287, 289. Statements of pedigree in deeds came to be accepted without the necessity of showing the death or unavailability of the declarant. See Town of Union v. Town of Plainfield, 39 Conn. 563, 565. This was especially true of ancient deed recitals. McCormick, Evidence (1954 Ed.) 298, p. 623. In recent years recitals in deeds have come to be accepted for matters beyond pedigree. Section 63 (29) of the Uniform Rules of Evidence, for example, accepts recitals in documents affecting property for the truth of the matter stated if the matter stated is relevant to the purpose of the document and if dealings with the property since the statements were made have not been inconsistent with the truth of the statements. Rule 803 (15) of the Federal Rules of Evidence is to the same effect. The question then is whether accepting the recitals in the Massey deed as an exception to the hearsay rule resolves our problem or only identifies it. *Page 512 
When dealing with deed recitals as exceptions to the hearsay rule we should note that the statements must involve matters of fact and not conclusions of law. Cf. Atwood v. Atwood, 84 Conn. 169,176. Thus, a statement that a grantor is a devisee may be accepted as an assertion that he has been so designated in a will. Whether he has an interest in the testator's estate, however, would depend upon whether the will had been admitted to probate in this state. Ferriday v. Grosvenor, 86 Conn. 698, 707; see Hatheway v. Smith, 79 Conn. 506, 511. Furthermore, even as a statement of fact, a recital is only prima facie evidence of that fact and prima facie evidence is always subject to rebuttal. See Tyrrell v. Comstock, 18 Conn. 210, 213. Applying those principles to the Massey deed it is quite apparent that the statement that the subject property is "now owned by the heirs and descendants and devisees of descendants" leaves many questions unanswered. One of the releasors in this deed is Henrietta McNaught. We know from the stipulated facts that Henrietta is the niece of Jennie McNaught, Addison Gardner's wife, and that Addison's estate has been probated in the district of Norwich. Henrietta is neither an heir nor a descendant of Sarah Chapman Gardner. There is no record in the Salem land records of a conveyance to her by grant or will. We do not know from the record before us how Henrietta acquired her interest in Sarah's property. If she is a devisee of a descendant there is nothing in the record before us which discloses it. Her bootstrap statement will not suffice. For all that is known at this point, Addison may have died intestate survived by Jennie, Jennie may have died testate, a nonresident, and her will may not have been admitted to probate in this state, a circumstance which would have left Henrietta's claims uncertain. Ferriday v. Grosvenor, supra, 707. *Page 513 
In this case the defendant seller agreed to convey the subject property by a good and sufficient warranty deed. By that agreement the defendant undertook to convey a marketable title. Frank Towers Corporation v. Laviana, 140 Conn. 45, 52; Perkins v. August, 109 Conn. 452, 455-56. To render a title unmarketable the defect in the title must be such that the title is not free from reasonable doubt in law or fact. Frank Towers Corporation v. Laviana, supra, 52-53. On the basis of the stipulated facts respecting Henrietta McNaught's interest alone, and without considering possible gaps in the chain of title involving other heirs of Sarah Chapman Gardner, we cannot say that the defect in the title to the subject property is free from doubt. This being so, the trial court's decision must be reversed.
We note the defendant's further claim that, should we decide that his title was not marketable, he was entitled to a reasonable time to cure any defect. The defendant's assumption is that time is not of the essence in the subject contract. We are not required to decide that issue. Assuming the validity of the defendant's claim, from the stipulated facts "no other conclusion is possible than that the . [defendant], at all times up to the time of this action, . . . [was] unable to convey to the plaintiffs a title which would fulfill their agreement; that the plaintiffs were excused from offering to perform the obligations assumed by them in that agreement, and that they are entitled to judgment." Lunde v. Minch, 105 Conn. 657, 662-63.
Finally, the record does not reveal any factual basis for the court's judgment for the defendant on his counterclaim. The defendant had requested damages because of his alleged liability for the real estate agent's commission and because of the expenses he incurred for a survey of the property. *Page 514 
The stipulated facts did not establish that the defendant was obligated to pay a commission to the real estate agent or the reasonable value of the agent's services. Furthermore, there were no stipulated facts upon which it could be found that the plaintiffs would be liable to share the expenses of the survey whether or not the seller was ready and able to convey marketable title.
 There is error, the judgment is set aside and the case is remanded with direction to render judgment in favor of the plaintiffs against the defendant on the complaint and on the counterclaim.
In this opinion SPEZIALE and SPONZO, Js., concurred.