879 P.2d 507

**MAUI LAND & PINEAPPLE COMPANY, INC., Plaintiff–Appellee,**

**v.**

**Josephine N. INFIESTO and Marvlee K. Naukana–Gilding, Defendants–Appellants,**

**and**

**Heirs and Assigns of Lohelohe;  Heirs and Assigns of Ahuka, Mother of J.W. Naukana;  Heirs and Assigns of Nakupala, aka D. Nakupala;  Heirs and Assigns of Miki;  Heirs and Assigns of Kahele Miki;  Heirs and Assigns of Pehu, aka Pehu Recard;  Heirs and Assigns of Giles Akane;  Heirs and Assigns of Mahuka;  Heirs and Assigns of Kaui;  Maui Electric Company, Limited;  Hawaiian Telephone Company;  Federal Land Bank of Sacramento, a corporation;  Owners and Occupants of the Adjoining Lands: Annette Hulumai Kaiahua or her Assigns;  Paul Pomaikai Manuwa or his Assigns;  Annette H. Kaiahua, Trustee under Deed of Trust made by Stanley Patrick K. Manuwa as Trustor, recorded in Liber 13862 at Page 388;  Matilda K. Naganuma;  Edward Napaepae;  Stanley A. Naganuma;  Emaline Napaepae;  State of Hawai'i;  County of Maui, by its Mayor, Hannibal Tavares;  Maui Business Bureau;  and Heirs of persons named above who are deceased, or persons holding under said Heirs;  and all other persons**

---

or corporations unknown claiming any right, title, estate, lien or interest in the real property described in Plaintiffs' Complaint adverse to Plaintiff's ownership and to all Whom it may concern, Defendants.

No. 17126.

Supreme Court of Hawai'i.

Aug. 23, 1994.

**404**

Margaret C. Jenkins of Goodsill, Anderson, Quinn & Stifel, Honolulu, for defendants-appellants.

Tom C. Leuteneker (Kelsey T. Kawano with him on the brief, of Carlsmith Ball Wichman Murray Case Mukai & Ichiki), Wailuku, Maui, for plaintiff-appellee.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

RAMIL, Justice.

In this action to quiet title, Defendants–Appellants Josephine Naukana Infiesto (Infiesto) and Marvlee K. Naukana–Gilding (Naukana–Gilding) (collectively Defendants) appeal from the circuit court's order granting partial summary judgment and denying their motion for reconsideration in favor of Plaintiff–Appellee Maui Land & Pineapple Company, Inc. (MLPC).

Defendants contend that: (1) the circuit court considered inadmissible hearsay evidence in granting MLPC's motion for partial summary judgment; (2) the circuit court erred in denying Defendants' motion for reconsideration in light of evidence suggesting that the 1898 deed conveying the property was untrustworthy; and (3) MLPC failed to establish prima facie evidence of title to the property in dispute.[1]

We disagree and affirm.

## I. FACTS

On November 18, 1988, MLPC filed an action to quiet title to nine parcels of land in the Lahaina District, Island of Maui.

In response, Infiesto and her sister, Naukana–Gilding, filed separate answers to MLPC's complaint to quiet title claiming an interest in parcels one and nine, as heirs to the original crown grantees. Defendants great-great-grandfather Mahuka and great-great-granduncle Lohelohe were the original crown grantees.[2] Their answers to interrogatories recite the relevant genealogy:

If you claim to own the property by inheritance, please state all information regarding that inheritance[.]

Answer: Lohelohe and Mahuka[.]

Lohelohe, awardee of LCA 3802, RP 4198, who was my great-great-granduncle; he was also the son of L. Palina my great-great-great-grandmother; L. Palina had two children, the said Lohelohe and Ahukai[.]

Mahuka, awardee of LCA 4708, who was my great-great-grandfather; he was also the husband of Ahukai my great-great-grandmother; Mahuka and Ahukai had seven children; they were: Kaaiawahia (w), Kekahili (m), Kaanaana (w), J.W. Naukana (m), R. Hakuole (w), Noa (m), and Setipanao (m).... J.W. Naukana my great-grandfather married Sarah Kalama, they had eight children, one of whom was my grandfather, Gershwin Naukana aka Gershom Lononuiakea Naukana.... My father, George Lononuiakea Naukana is the son of Gershom Naukana and Josephine Naheana Trask.... I am the daughter of George L. Naukana and Elsie Franco who had 3 children[.]

After conducting discovery, MLPC moved for partial summary judgment on its claim for title to parcels one and nine. MLPC argued that prima facie evidence of title could be found as a matter of law in the following facts:

1. [MLPC] had in its possession original deeds of conveyance to Mahuka and Lohelohe.

---

1. Defendants also asserted that they had a valid claim to the property as "heirs of Naukana's siblings." However, during oral arguments Defendants admitted that they could not sustain a claim to the property as heirs of Naukana's siblings. Therefore, we need not further address this issue on appeal.

2. Parcel one was originally awarded to Mahuka and parcel nine was originally awarded to Lohelohe.

2. Lohelohe did not convey his property and his estate was never probated.

3. Mahuka did not convey his property and his estate was never probated.

4. Mahuka was married to Ahukai, the sister of Lohelohe.

5. Mahuka and Ahukai had seven children: sons Kekahili, J.W. Naukana, Noa and Setipano; and daughters Kaaiawahia, Kaanaana and R. Hakuole.

6. On June 30, 1898, J.W. Naukana purported to convey by warranty deed all interest in the properties of Lohelohe and Mahuka to William C. Achi.

7. On July 19, 1898, William C. Achi conveyed his interests in the above properties to H.P. Baldwin.

8. Title comes down straight and unbroken from H.P. Baldwin to [MLPC].

MLPC also argued that because Defendants were the great-great-granddaughters of J.W. Naukana (Naukana), they had no valid claim to the properties, inasmuch as Naukana had conveyed his interest to William C. Achi (Achi).

Moving *pro se*, Defendants opposed the motion, arguing that: (1) the deed purporting to convey title to Achi (Naukana–Achi deed) was invalid because there was no evidence that the grantor, Naukana, had full title to the property of Mahuka (his father) and Lohelohe (his uncle) entitling him to convey title; and (2) Defendants were not claiming an interest in the properties as heirs under Naukana, but as collateral descendants of their great-great-granduncle Lohelohe, their great-great-granduncles Kekahili, Noa and Setipano and their great-great-grandaunts Kaaiawahia, Kaanaana, and R. Hokuole. The circuit court disagreed and granted MLPC's motion for partial summary judgment by order filed August 26, 1991.

In January 1992, while this action was pending, Naukana–Gilding discovered additional information at the Mission House Museum that Naukana's sister, Kaaiawahia, married Samuel Kauwealoha (Kauwealoha) in 1847. Naukana–Gilding also found a letter from Kauwealoha, discussing his life with his wife, Kaaiawahia, as Christian missionaries in the Marquesas Islands. In his letter, Kauwealoha stated that his wife was the sister of Naukana and that she and Naukana lived with their parents, grandparents and younger brother and sisters at Honolua, Maui. The letter also stated that Kaaiawahia died on February 13, 1893. Naukana–Gilding also learned that Kauwealoha died in 1909. In addition, Naukana–Gilding recovered a photograph in the Mission House archives captioned "Reverend Samuel Kauwealoha and his granddaughter at Uapo, Marquesas Is., Oct. 1896."

Based on this newly discovered evidence, Defendants moved *pro se* for reconsideration of the order granting partial summary judgment. Defendants argued that the new evidence that Naukana's sister, Kaaiawahia, married Kauwealoha, raised the possibility that Kaaiawahia passed her interest in the property to her husband and consequently Naukana did not have full title to the properties conveyed in 1898. The court denied Defendants' motion.

Thereafter, Defendants' present attorneys filed a notice of appearance in the case and moved for reconsideration of the court's order denying reconsideration of its order granting partial summary judgment. Defendants argued that MLPC did not carry its burden of establishing as a matter of law its title to the subject property because there was "no competent admissible evidence to show that MLPC's grantor, J.W. Naukana, possessed an undivided interest in the property he purported to convey[.]" This later motion to reconsider was denied on May 22, 1992. In denying the motion to reconsider, the court ruled in relevant part:

The deed is authentic and is admissible under Hawai'i Rules of Evidence Rule [HRE] 803(b)(15).

The fact that there is evidence that the grantor on that deed, J.W. Naukana, had a brother-in-law living, does not indicate that the document lacks trustworthiness.

The court has also considered the Defendants['] argument that the deed contains an inadmissible legal conclusion and has considered the issue and the authority submitted and will not adopt the movants' view.

The court also determines that the Defendants are attempting to set up title in a stranger and that they lack standing to do so.

On April 13, 1993, the circuit court entered final judgment, declaring MLPC the fee simple owner of the property in dispute.

This timely appeal followed.

## II. *DISCUSSION*

### A. *Deed Recital—Admissible Hearsay Evidence*

Defendants contend that, in granting MLPC's motion for partial summary judgment, the circuit court improperly considered recitals in the 1898 Naukana–Achi deed as evidence supporting MLPC's claim of title to the property. Specifically, Defendants contend that the recitals in the deed that Naukana was "lawfully seized in fee simple" and the property was "clear and free of all encumbrances" constituted inadmissible hearsay evidence and was therefore improperly considered by the court in granting partial summary judgment.

In granting MLPC's motion for partial summary judgment, the court ruled that:

Defendants Infiesto and Naukana–Gilding are unable to produce any evidence that any sibling of J.W. Naukana survived him and passed any interest in the subject properties. Recitals in J.W. Naukana's deed of 1898 that he was "lawfully seized in fee simple.... clear and free of all encumbrances" do not lack trustworthiness. H.R.E. 803(b)(15). No genuine issues of material fact is present for trial with regard to Defendants Infiesto and Nauakana–Gilding [sic]. Rule 56(c), [Hawai'i Rules of Civil Procedure (HRCP)] H.R.C.P.

HRE Rule 803(b)(15) provides a hearsay exception for:

[s]tatements in documents affecting an interest in property. A statement contained in a document purporting to establish or affect an interest in property if the matter stated was relevant to the purpose of the document, unless the circumstances indicate lack of trustworthiness.

*See also Apo v. Dillingham Inv. Corp.*, 57 Haw. 64, 67, 549 P.2d 740, 743 (1976) (declaration in a deed about family history or pedigree are among the oldest exceptions to the hearsay rule).

Defendants contend that the HRE Rule 803(b)(15) hearsay exception applies exclusively to a statement of fact and that because the deed recital upon which the court based its opinion is a statement of law, the exception does not apply. *Carter v. Girasuolo*, 34 Conn.Supp. 507, 511, 373 A.2d 560, 563 (1976) (when dealing with deed recitals as exceptions to the hearsay rule, the statement should involve matters of fact and not conclusions of law).

■ Defendants, however, mischaracterize the deed's recital as a statement of law. The Advisory Committee's Note to Federal Rules of Evidence (FRE) Rule 803(b)(15), which is substantially similar to HRE Rule 803(b)(15),[3] provides guidance:

Dispositive documents often contain recitals of fact. Thus a deed purporting to have been executed by an attorney in fact may recite the existence of the power of attorney, or a deed may recite that the grantors are all the heirs of the last record owner. Under the rule these recitals are exempted from the hearsay rule.

Graham, *Federal Practice and Procedure: Evidence* § 6766 at 704 (1992). Similarly, in the present case the circuit court relied on the deed's recital that Naukana was "lawfully seized in fee simple" and the property was "clear and free of all encumbrances." This statement is a recital of fact as contemplated

---

**3.** The commentary to HRE Rule 803(b)(15) incorrectly states that HRE Rule 803(b)(15) is identical to FRE Rule 803(15).

FRE Rule 803(15) provides:

Statements in Documents Affecting an Interest in Property. A statement contained in a document purporting to establish or affect an

interest in property if the matter stated was relevant to the purpose of the document, unless dealings with the property since the document was made have been inconsistent with the truth of the statement or the purport of the document.

by HRE Rule 803(b)(15) and is therefore exempted from the rule against hearsay.

Defendants also argue that the recital in the deed would not have been considered by the court "had Naukana been alive and available to testify." However, HRE Rule 803(b)(15) is specifically premised on the recognition that a declarant to a transaction may not be alive or available to testify. In discussing FRE Rule 803(15), Judge Weinstein explains that:

> [t]he rule rests both on necessity—for litigation may arise so many years after a conveyance that declarants and witnesses to the transaction may be unavailable—and on a number of indicia of trustworthiness: (1) the circumstances in which dispositive instruments are made and the financial interests at stake promote reliability; (2) the fact that the recital is in writing eliminates the danger of inaccuracy of transmission; (3) since the statement must be germane to the purpose of the document, a protest would be expected about an untrue fact intrinsic to the transaction; and (4) the exception does not apply if dealings with the property have been inconsistent with the tenor of the document.

4 Weinstein & Berger, *Weinstein's Evidence* § 803(15)[01] at 803–307 (1984).

Accordingly, we hold that the circuit court did not abuse its discretion in considering the recitals in the deed pursuant to HRE Rule 803(b)(15).

### B. Trustworthiness of Deed Recital in Light of Recently Discovered Evidence

In a related argument, Defendants contend that recently discovered evidence of Kaaiawahia's marriage to Kauwealoha renders Naukana's deed recital that he was "lawfully seized in fee simple" untrustworthy under HRE Rule 803(b)(15). Specifically, Defendants contend that the evidence of Kaaiawahia's marriage to Kauwealoha suggests that if Kaaiawahia died intestate, any interest in the property she may have acquired as an heir of Mahuka and Ahukai, would have passed to her husband, who then may have died in 1909 with an interest in the property. Thus, Defendants posit that Naukana did not

have full title to convey the properties in 1898 and his statement that "I am lawfully seized in fee simple" is untrustworthy under HRE Rule 803(b)(15) and was improperly considered by the circuit court.

■ Under HRE Rule 803(b)(15), a statement contained in a deed is admissible if the matter stated is relevant to the purpose of the document and the circumstances do not indicate a lack of trustworthiness.

■ In the present case, circumstances do not indicate a lack of trustworthiness. Subsequent dealings with the property have been consistent with the tenor of the 1898 deed in which Naukana conveyed the property to Achi. On July 18, 1898, Achi conveyed the property by deed to H.P. Baldwin. Thereafter, title was conveyed from H.P. Baldwin to Baldwin Packers and ultimately to MLPC.

In addition, Defendants have not alleged or provided evidence that the heirs of Kaaiawahia or Kauwealoha at any time, challenged the various conveyances of the property by Naukana or his successors. Therefore, because there is no evidence that Kaaiawahia ever became seized of a property interest, Defendants' contention that Kauwealoha died with an interest in the property is pure speculation.

Based on the foregoing, we cannot agree that evidence of Kaaiawahia's marriage to Kauwealoha and the theory that Kaaiawahia may have passed a theoretical interest in the subject property to her husband renders Naukana's statement in the deed untrustworthy.

### C. Prima Facie Evidence of Title

Finally, Defendants contend that the circuit court erred in granting MLPC's motion for partial summary judgment because MLPC failed to establish prima facie evidence of title to the property in dispute. We disagree.

■ In an action to quiet title, the burden is on the plaintiff to prove title in and to the land in dispute, and, absent such proof, it is unnecessary for the defendant to make any showing. *State v. Zimring*, 58 Haw. 106,

**408**

110, 566 P.2d 725, 729 (1977) (citations omitted). The plaintiff has the burden to prove either that he has paper title to the property or that he holds title by adverse possession. *Hustace v. Jones,* 2 Haw.App. 234, 629 P.2d 1151 (1981); *see also Harrison v. Davis,* 22 Haw. 51, 54 (1914). While it is not necessary for the plaintiff to have perfect title to establish a prima facie case, he must at least prove that he has a substantial interest in the property and that his title is superior to that of the defendants. *Shilts v. Young,* 643 P.2d 686, 689 (Alaska 1981). *Accord Rohner v. Neville,* 230 Or. 31, 35, 365 P.2d 614, 618 (1961), *reh'g denied,* 230 Or. 31, 368 P.2d 391 (1962).

In the present case, MLPC has in its possession the original Land Commission Award 3802 to Lohelohe and the Land Commission Award 4708 to Mahuka, dated July 24, 1897. These documents evince the physical delivery of the original title documents to MLPC's predecessors in the chain of title and ultimately to MLPC. In addition, the Naukana–Achi deed contained genealogy supporting Naukana's right to convey the property. Naukana declared in the deed that Lohelohe was his uncle and that Mahuka was his father. Naukana further declared that he was "lawfully seized in fee simple" and had "good right to sell and convey" the property. Achi then conveyed the property to H.P. Baldwin by deed dated July 19, 1898. Thereafter, title was conveyed unbroken from H.P. Baldwin to Baldwin Packers and ultimately to MLPC.

Based on the foregoing, we hold that MLPC has clearly demonstrated a substantial interest in the property and that their title is superior to that of Defendants.

### III. *CONCLUSION*

We hold that MLPC has amply demonstrated its title to the property in dispute. Therefore, we affirm the circuit court's grant of summary judgment in favor of MLPC and its final judgment declaring MLPC the fee simple owner of the property.