Electronically Filed
Intermediate Court of Appeals
28556
11-JAN-2011
10:20 AM

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---oOo---


ALEXANDER & BALDWIN, INC., a Hawai'i Corporation,
Plaintiff-Appellee, v. KEITH A. SILVA, Defendant-Appellant,
and HONOLU'U; KAUKAHI; NAHINU; KENOI; MAHIAI; LUI MALO;
KAMAKA KALA; KEAU; KEAO; KEKUEWA; ROBERT KALALUHI;
(except Pualani Naehu), THOMAS KALALUHI; PETER KALALUHI
(except Leialoha Kalaluhi); MITCHEL KALALUHI (except
Nohealeimano Vaughn); KUHELELOA; A.K. MIKA (except
Mary Rose Nakai); STATE OF HAWAI'I; OFFICE OF HAWAIIAN
AFFAIRS; KUKUIULA DEVELOPMENT COMPANY (HAWAII) LLC;
or their heirs and assignees; and JOHN DOES 1-50,
JANE DOES 1-50, DOE CORPORATION 1-50; DOE PARTNERSHIPS
1-50 and DOE ENTITIES 1-50, Defendants


NO. 28556


APPEAL FROM THE CIRCUIT COURT OF THE FIFTH CIRCUIT
(CIVIL NO. 04-1-0026)


JANUARY 11, 2011


FOLEY, PRESIDING J., LEONARD, J., AND
CIRCUIT COURT JUDGE BORDER, IN PLACE OF
NAKAMURA AND FUJISE, JJ., BOTH RECUSED


OPINION OF THE COURT BY LEONARD, J.

OPINION

Defendant-Appellant Keith A. Silva (**Silva**) appeals from the First Amended Rule 54(b) Final Judgment for Plaintiff Alexander & Baldwin [(**A&B**)] Against Defendants, Quieting Title to Tax Map Key [(**TMK**)] Parcel Nos. (4) 2-6-4-11 and (4) 2-6-04-18 (**Amended Judgment**), entered on April 20, 2007, in the Circuit Court of the Fifth Circuit (**Circuit Court**).[1]

We hold that: (1) the Circuit Court was not required to enter findings of fact and conclusions of law in support of its order granting partial summary judgment in favor of A&B and against Silva; (2) a quiet title plaintiff may seek partial summary judgment on the issue of whether a particular defendant has an interest in the subject property without the plaintiff first establishing its own *prima facie* claim to title; (3) as the party who will have the burden at trial to show that it has superior title, the quiet title plaintiff-movant bears the burden of production in showing that there is no genuine issue of material fact regarding the defendant-claimant's interest, as well as the ultimate burden of persuasion on the issue; (4) in this case, A&B failed to satisfy its initial burden of production with regard to Silva's alleged interest in Parcel 18 (described below), thus the burden never shifted to Silva, and the Circuit Court erred in granting A&B's request for partial summary judgment with respect to Parcel 18; (5) viewing all of the evidence and inferences in the light most favorable to Silva, A&B having submitted no evidence in support of its own claim of title and merely asserting that Silva's claim to title is fatally flawed because Silva does not have an unbroken chain of paper title or claim adverse possession, A&B failed to establish that there was no genuine issue of material fact and that it was

---

[1]     The Honorable Kathleen N.A. Watanabe presided. As noted herein, other judges presided over certain orders at issue on this appeal.

entitled to judgment against Silva as a matter of law with respect to Parcel 11 (described below); (6) notwithstanding the Circuit Court's subsequent ruling in favor of A&B on its quiet title claims to Parcels 11 and 18, in light of our determination that the Circuit Court erred in granting partial summary judgment against Silva, whether A&B's evidence of title is superior to the evidence of title brought forward by Silva appears to involve a determination of disputed material facts; and (7) inasmuch as it enters judgment in favor of A&B and against Silva, the Amended Judgment is vacated and the case is remanded to the Circuit Court.

I.    BACKGROUND

On February 27, 2004, A&B filed a Complaint for Quiet Title and Partition pertaining to three parcels of land located in Koloa, Hawai'i, on the island of Kaua'i. In the Complaint, A&B alleged it is the sole and exclusive owner of TMK Parcels (4)2-6-04-10 (**Parcel 10**) and (4)2-6-04-11 (**Parcel 11**) (together comprising Land Commission Award No. 4766), and TMK Parcel (4)2-6-04-18 (**Parcel 18**) (constituting Land Commission Award No. 5448). The Complaint listed several defendants; numerous others answered the Complaint, alleging ownership interests in the three parcels. On October 5, 2004, Silva filed his Answer to A&B's Complaint, claiming to own the land described in the Complaint "by inheritance and/or by deed."

A&B proceeded by filing a motion for partial summary judgment on April 28, 2005, against several defendants, not including Silva, seeking an order that those defendants have no interest in the subject parcels. The Circuit Court granted the April 28, 2005 motion, concluding that the defendants identified in the motion have no interest in Parcels 10, 11, and 18.

On June 8, 2005, A&B filed another motion for partial summary judgment, this time against Silva, seeking an order

determining that Silva has no interest in the subject parcels.[2/]
In support of its motion, A&B attached the affidavit of Colleen
Uahinui (**Uahinui**), which stated the following:

1.   I am competent to testify to the matters contained
     herein, and I do so based upon my own personal
     knowledge.  I am currently employed at Title Guaranty
     of Hawaii Incorporated where I work in the Historic
     Title Department whose primary objective is to
     research the chain of title to real property in
     Hawaii.

2.   Land Commission Award No. 4766, Apana 3, was issued to
     Nakaiewalu.

3.   By Partition Deed the land of Nakaiewalu was divided
     between the children of Oheohekuahiwi and Monimoni
     pursuant to a decision of Judge Jacob Hardy on
     February 24, 1883.

In addition, A&B attached a copy of a chart purportedly produced
by Silva during discovery, which according to an affidavit by
A&B's attorney depicted Silva's purported chain of title to Land
Commission Award No. 4766.  A&B's primary argument in support of
its motion for partial summary judgment was that Silva's chart
failed to establish a chain of paper title beginning with one of
the children of Oheohekuahiwi or Monimoni.

---

[2] Although A&B's motion for partial summary judgment was also filed
against Defendants Albert J. Silva and Randall M. Silva, this opinion refers
only to Defendant-Appellant Keith A. Silva because he was the only defendant
to file an appeal from the judgment finalizing the order on this motion.  This
court has no jurisdiction to grant relief to a party who has failed to timely
appeal from a final judgment entered against that party.  See Hawai'i Rules of
Appellate Procedure (**HRAP**) Rules 3(c) & 4(a); cf. Bacon v. Karlin, 68 Haw.
648, 650, 727 P.2d 1127, 1128 (1986) (failure to file a timely notice of
appeal in a civil matter is a jurisdictional defect that the parties cannot
waive and the appellate courts cannot disregard in the exercise of judicial
discretion); Gold v. Harrison, 88 Hawai'i 94, 962 P.2d 353 (1998) (attorney
must be named in notice of appeal for reviewing party to have jurisdiction
over imposition of sanctions against attorney); Stewart Properties, Inc. v.
Brennan, 8 Haw. App. 431, 435, 807 P.2d 606, 608 (1991); see also 15A C.
WRIGHT, A. MILLER, E. COOPER, FEDERAL PRACTICE AND PROCEDURE, § 3902 at 69-70 (2010)
(footnotes omitted) ("The general standing doctrine that a litigant may not
advance the rights of others is reflected in the general rule that a party may
not appeal to protect the rights of others. The most obvious justification for
this rule is found in cases in which an appellant seeks to assert the rights
of its adversary. Since parties originally aligned as coparties may easily
become adversaries as a case progresses, the rule against asserting the rights
of an adversary could easily apply to many efforts to advance the interests of
a nonappealing coparty.").

In his memorandum in opposition filed July 6, 2005 (**Opposition**), Silva claimed paper title to Parcel 10 and Parcel 11 and submitted numerous exhibits in support of his claims. Silva also argued that A&B failed to establish *prima facie* evidence of its ownership and, therefore, was not entitled to partial summary judgment against Silva. At the July 12, 2005 hearing on A&B's motion, Silva again argued that genuine issues of material fact existed with respect to title and that A&B failed to meet its burden as the plaintiff in a quiet title action. Specifically, Silva asserted that A&B had not met its burden of demonstrating its own title to the subject parcels and had not provided any certified documents supporting its claim.

On July 22, 2005, the Circuit Court issued an order pursuant to Hawai'i Rules of Civil Procedure (**HRCP**) Rule 56(f) granting Silva additional time, as requested, to submit documents and relevant materials in order to further oppose A&B's motion for partial summary judgment. Accordingly, on July 26, 2005, Silva filed a supplemental memorandum in opposition to A&B's motion for partial summary judgment (**Supplemental Opposition**). A&B filed a reply memorandum on August 2, 2005.

On October 12, 2005, the Circuit Court issued an order granting A&B's motion for partial summary judgment against Silva, concluding that Silva has no interest in Parcels 10, 11, and 18.[3]

Thereafter, on December 13, 2005, A&B filed another motion for partial summary judgment, this time requesting that the Circuit Court declare that A&B is the sole and exclusive owner of Parcels 11 and 18. A&B claimed it has paper title or, in the alternative, it acquired title to the two parcels through adverse possession. A&B attached thirty-seven exhibits to its memorandum in support of the motion, including certified copies

---

[3] The Honorable George M. Masuoka presided.

of relevant documents purportedly supporting its claim of paper title. At this time, the Office of Hawaiian Affairs (**OHA**) was the only remaining defendant who actively contested A&B's claim to Parcels 11 and 18.

On March 8, 2006, the Circuit Court denied A&B's December 13, 2005 motion for partial summary judgment without prejudice, stating that "genuine issues of material fact remain as to [A&B's] claim for adverse possession."[4]

On March 31, 2006, A&B filed another motion for partial summary judgment against OHA, asking the Circuit Court to dismiss any claims that OHA had with respect to Parcels 10, 11, and 18. In response, OHA disclaimed any interest in Parcels 10, 11, and 18. On May 17, 2006, the Circuit Court granted A&B's March 31, 2006 motion for partial summary judgment against OHA.

On September 22, 2006, A&B filed its final motion for partial summary judgment, renewing its request that A&B be declared the sole and exclusive owner of Parcels 11 and 18. A&B's September 22, 2006 motion was unopposed.[5] On October 30, 2006, the Circuit Court granted A&B's September 22, 2006 motion, concluding that A&B is the sole and exclusive owner of Parcels 11 and 18.[6]

On November 15, 2006, the Circuit Court entered an HRCP Rule 54(b) judgment in favor of A&B and against all defendants. The Circuit Court entered judgment against Silva pursuant to the October 12, 2005 order granting A&B's motion for partial summary judgment against Silva. The judgment concluded, *inter alia*, that A&B was the sole and exclusive owner of Parcel 11 and Parcel 18,

---

[4]     The Honorable Kathleen N.A. Watanabe presided.

[5] Defendant Palani Vaughn filed a position statement that did not oppose the relief sought by A&B in its September 22, 2006 motion for partial summary judgment. Vaughn contested A&B's claim only with respect to Parcel 10.

[6] The Honorable Kathleen N.A. Watanabe presided.

but also, incorrectly, identified Parcel 11 as the parcel with unresolved claims.

Subsequently, A&B sought to amend the November 15, 2006 judgment in order to clarify that Parcel 10 was the parcel with unresolved claims. On April 20, 2007, the Circuit Court entered the Amended Judgment incorporating that change. On May 21, 2007, Silva filed a timely notice of appeal.

II. POINTS OF ERROR

Silva raises the following points of error on appeal:

(1) The Circuit Court's findings and conclusions are "insufficient and conclusory" because the appellate court has no basis upon which to determine how the Circuit Court decided the subsidiary points of fact and law;

(2) The Circuit Court erred in granting partial summary judgment against Silva because A&B failed to make a *prima facie* showing of its own title, and Silva had no obligation to put on his case absent A&B's *prima facie* showing;

(3) The Circuit Court erred in finding that there are no genuine issues of material fact concerning whether Silva has an interest in the subject parcels;

(4) The Circuit Court erred in concluding that Silva has no interest in Parcels 10, 11, and 18 because (a) in response to A&B's motion for partial summary judgment, Silva claimed title through two sources and A&B offered no evidence to the contrary, and (b) there were triable issues of fact regarding Silva's interest in the subject parcels; and

(5) The Circuit Court erred in entering judgment in favor of A&B and against all defendants with respect to the ownership of Parcels 11 and 18.

III. STANDARD OF REVIEW

The appellate court reviews "the circuit court's grant or denial of summary judgment de novo." Querubin v. Thronas, 107 Hawai'i 48, 56, 109 P.3d 689, 697 (2005) (citation omitted).

IV.   DISCUSSION

    A.   The Issue of Findings and Conclusions

        Silva argues, without citation to any rule, case, or other authority, that the Circuit Court reversibly erred because it did not enter findings of fact and conclusions of law in support of the order granting partial summary judgment against him.  This argument is without merit.  See, e.g., Dalton v. City & County of Honolulu, 51 Haw. 400, 403 n.2, 462 P.2d 199, 203 n.2 (1969) ("[F]indings of fact and conclusions of law are unnecessary in summary judgments.  This is because disputed issues of fact cannot be resolved on summary judgment.") (citation omitted); Hawaii Cmty. Fed. Credit Union v. Keka, 94 Hawai'i 213, 217 n.3, 11 P.3d 1, 5 n.3 (2000) (stating that "the circuit court was not required to enter any findings of fact in ruling on the Credit Union's motion [for] summary judgment"); Bhakta v. County of Maui, 109 Hawai'i 198, 209, 124 P.3d 943, 954 (2005) (citing Gump v. Walmart Stores, Inc., 93 Hawai'i 428, 437, 5 P.3d 418, 427 (App. 1999), aff'd in part and rev'd in part on other grounds, 93 Hawai'i 417, 5 P.3d 407 (2000) (referring to the lower court's denial of a motion for summary judgment:  "No findings of fact or conclusions of law were filed thereon, and none were required.  Hawai'i Rules of Civil Procedure (HRCP) Rule 52(a).").

    B.   The Partial Summary Judgment Ruling Against Silva

        Silva argues that the Circuit Court erred in concluding that A&B carried its burden of demonstrating that there were no genuine issues of material fact concerning Silva's claims to the subject parcels.

        First, we want to be clear about which parcels are at issue on appeal.  Even though the Circuit Court's October 12, 2005 order granting partial summary judgment against Silva finds and concludes that Silva has no interest in Parcel 10 (as well as Parcels 11 and 18), no issue concerning Silva's claimed interest

in Parcel 10 is before this court. The Amended Judgment expressly states that it does not dispose of the claims and crossclaims concerning Parcel 10. Thus, our review is limited to the Circuit Court's ruling that Silva has no interest in Parcels 11 and 18.

1. The Propriety of *Partial* Summary Judgment in Quiet Title Cases

Silva's primary argument is that the Circuit Court erred in granting A&B's June 8, 2005 motion for partial summary judgment against him because, at the time that the motion was granted, A&B had not yet submitted evidence supporting its own claim to an interest in the subject parcels. In essence, Silva argues that it is improper for a quiet title plaintiff to try to eliminate defendant-claimants *seriatum* until the plaintiff first establishes a *prima facie* case that the plaintiff has an interest in the property by paper title or adverse possession. Silva cites Harrison v. Davis, 22 Haw. 51 (1914), and Maui Land & Pineapple Co., Inc. v. Infiesto, 76 Hawai'i 402, 879 P.2d 507 (1994), in support of this argument. Silva's reliance on these cases is misplaced.[7]

Silva cites the Harrison case at page 54 of volume 22 of the Hawaiian Reports without any elucidation of the particular statement of law or factual parallels that make it *apropos* to his argument concerning A&B's request for partial summary judgment against him. We presume that Silva cites Harrison for the general legal proposition: "Ordinarily, upon an issue of title, the plaintiff introduces evidence to prove that his title was in its inception derived from the government and thence passed to

---

[7] A&B, on the other hand, argues that the Hawai'i Supreme Court addressed this issue in First Hawaiian Bank v. Weeks. 70 Haw. 392, 772 P.2d 1187 (1989). A&B is mistaken. In Weeks, the supreme court reviewed an order granting plaintiffs summary judgment on the defendants' counterclaim, which affirmatively sought to quiet title in the defendants, and an order granting summary judgment on a cross-claim, which affirmatively sought to establish title in certain property. Id. at 393, 772 P.2d at 1188.

him by mesne conveyances, devise, descent or adverse possession." 22 Haw. at 54. Albeit of continuing legal vitality, that statement of law does not settle any questions concerning a plaintiff's use of partial summary judgment motions in quiet title actions.

Indeed, the Harrison case followed a trial in which Harrison, the plaintiff, sought to quiet the title to his claim of an undivided one-half interest in a certain tract of land under a twenty-five-year lease. Id. at 52. After the close of the plaintiff's case, the trial court granted the defendant's motion for non-suit (i.e., dismissal) in part on the grounds that there purportedly was a lease outstanding when the lease that was ultimately assigned to Harrison was made, and in part on the grounds that Harrison had failed to deraign his title from the government. Id. at 52-53.[8] Concerning the latter grounds, the supreme court made the above-quoted statement concerning the ordinary method a quiet title plaintiff uses to prove his claim. But, the court then went on to excuse Harrison from making that showing in support of his *prima facie* case because the defendant had, in a prior partition action, personally signed a pleading acknowledging the title held by a person who appeared to be a common source for both Harrison's and the defendant's claims of interest in the property. Id. at 55-56. The supreme court set aside the judgment on the non-suit and remanded the case for further proceedings. Id. at 58.

Interestingly, after the resumption and completion of the trial on remand, the trial court held that Davis, the defendant, had not rebutted the *prima facie* case made by Harrison, and Davis then took an appeal from the judgment in favor of Harrison. Harrison v. Davis, 22 Haw. 465, 465-67 (1915)

_____

[8] To "deraign title from the government" refers to the process of proving title back to the original land grant awards by first establishing the original land grant and then showing the chain of title to the purported title holder.

(**Harrison II**).  In Harrison II, the Hawai'i Supreme Court succinctly held:

> At the trial of an action to quiet title under the statute (R.L. Ch. 132)[9] it is incumbent upon the plaintiff to prove a title in or to the land in dispute, and, if he fails to do so, it will be unnecessary for the defendant to make any showing.  In case each party adduces evidence of title and it appears that the claims are adverse the court will decide between them, but the defendant may not defeat the plaintiff's case by showing that although he has no title in himself, one who is not a party to the action has a title superior to that relied on by the plaintiff.

22 Haw. at 466.

The Harrison cases clearly inform us of the parties' respective burdens at trial in a quiet title action.  At trial, the quiet title plaintiff has the initial burden to prove a title in or to the land in dispute.  The plaintiff's *prima facie* case can be made in various ways, but is usually done by bringing forward evidence of the initial land grant award and tracing ownership forward to the plaintiff through "mesne conveyances, devise, or descent" or through evidence of adverse possession, as provided in the quiet title statute.  If the plaintiff fails to meet his initial burden at trial, then the defendant need not bring forward any evidence – the plaintiff's case is subject to dismissal, the plaintiff is not entitled to have its title quieted by the court, and the case ends without a determination of title.  If the plaintiff and the defendant both bring forward evidence supporting their claims of title, then the court must decide, based on the evidence presented, which party has title superior to that of the other party.  Harrison II also held that the defendant may not prevent the plaintiff from quieting plaintiff's title, except by demonstrating that the defendant's title is superior to the plaintiff's title, *i.e.*, the defendant may not defeat the plaintiff's claim by relying on evidence of a third-party's superior title.  22 Haw. at 466.  The Harrison

---

[9]     Hawai'i's quiet title statute is now codified at Hawaii Revised Statutes Chapter 669.

cases do not, as suggested by Silva, preclude a quiet title plaintiff's use of partial summary judgment motions to narrow the issues in controversy.

In Maui Land & Pineapple, the supreme court reiterated that, in order to successfully quiet title, the quiet title plaintiff must bring forward *prima facie* evidence of paper title or title by adverse possession. 76 Hawai'i at 407-08, 879 P.2d at 512-13. Maui Land & Pineapple clarified that the quiet title plaintiff need not have perfect title, but must prove a substantial interest in the property and title superior to that of the defendants. Id. at 408, 879 P.2d at 513. Although the Maui Land & Pineapple decision reviewed a trial court's granting of partial summary judgment in favor of a quiet title plaintiff, the plaintiff's motion therein affirmatively sought to establish its *prima facie* case and was not tailored to simply eliminate particular defendant-claimants, as in the case at bar. Id. at 404, 879 P.2d at 509. Indeed, in Maui Land & Pineapple, at oral argument the defendants admitted that they could not sustain a claim to the property, thereby obviating any need for the court to further consider their claim. Id. at 404 n.1, 879 P.2d at 509 n.1. Maui Land & Pineapple does not support Silva's argument that partial summary judgment cannot used by a quiet title plaintiff to narrow the issues in controversy.

During the pendency of this appeal, the Hawai'i Supreme Court decided Omerod v. Heirs of Kaheananui, 116 Hawai'i 239, 172 P.3d 983 (2007), a quiet title action adjudicated on cross-motions for summary judgment. Omerod provides considerable guidance on and support for the principles laid out in the Harrison and Maui Land & Pineapple cases in the context of summary adjudication of quiet title disputes, but does not

squarely address the issue presented in this case.[10/] In Omerod, the plaintiffs sought to quiet title in an undivided one-half interest in the ahupua'a of Hilea Nui on the Island of Hawai'i. Omerod at 244-45, 172 P.3d at 988-89. The quiet title plaintiffs filed a summary judgment motion seeking an affirmative ruling that they owned an equal interest in the subject land and that the defendants, including Mauna Kea Agribusiness, Co. (**MKA**), did not have absolute paper title and had not gained title through adverse possession. Id. at 250, 172 P.3d at 994. MKA also filed a summary judgment motion. The supreme court described the circuit court's conclusions about MKA's motion as follows:

> [The circuit court concluded] that MKA did not have the burden of proving title to an interest under LCA 9971, Apana 11 nor in Hilea Nui, because MKA did not seek a judgment quieting title to Hilea Nui or Hilea Iki in its favor but rather, it sought summary judgment dismissing Omerod's claims of title to the Ahupua'as of Hilea Iki and Hilea Nui. On the other hand, the [circuit] court noted that MKA bore the burden of producing evidence in support of its motion for summary judgment. However, because MKA, as a defendant in the quiet title action, did not bear the burden of proving title to Hilea Iki or Hilea Nui at trial, it could discharge its initial burden on summary judgment by pointing out that the record lacks substantial evidence to support a necessary element of the non-movant's claim. Thus, the [circuit] court concluded that MKA was simply required to establish that Omerod is unable to establish a claim to title to an interest in Hilea Nui.

Id. at 252, 172 P.3d at 996 (internal quotation marks, brackets, elipses, and citation omitted).

The supreme court later reconfirmed which issues were decided on the cross-motions for summary judgment: "To reiterate, in its March 22, 2004 Decision and Order, the [circuit] court (1) granted summary judgment in favor of MKA and TNC against Omerod and Kaluna to the extent that they claim an interest in Hilea Nui under LCA 7715:14; and (2) denied Omerod's and Kaluna's motions for summary judgment." Id. at 254, 172 P.3d

---

[10] The discussion herein of the Omerod case is simplified to highlight the aspects of that case that are most relevant to the issues now before this court.

at 998 (internal quotation marks and brackets omitted). Thus, the only issue before the supreme court in Omerod was whether the quiet title plaintiffs were entitled to judgment in their favor on the quiet title claims, as a matter of law. The supreme court in Omerod was not faced with the question of whether the quiet title plaintiffs could seek summary judgment against one or more defendant-claimants to eliminate potentially meritless claims.

In this context, and in light of the quiet title plaintiffs' burden to prove their right to title in the subject property, the supreme court held, *inter alia*:

> [I]n their motion for summary judgment, [the quiet title defendants] were required to show that there was no genuine issue of material fact and they were entitled to judgment as a matter of law on the underlying claim, *i.e.*, [the plaintiffs'] claim that they owned an undivided one-half interest in Hilea Nui. [The defendants] were not required to do more than show that [the quiet title plaintiffs] could not possibly prevail on the underlying claim in order to prevail on their motion for summary judgment. . . .
>
> Furthermore, this court has ruled that in an action to quiet title, only the relative interests of the parties to the action may be considered. See Ka'u Agribusiness Co. v. Heirs or Assigns of Ahulau, 105 Hawai'i 182, 187-88, 95 P.3d 613, 618-19 (2004) (stating that "'[i]t is enough that the interest asserted by the plaintiff ... is superior to that of" the defendant such that a defendant "cannot argue that the bill may not be granted for the Plaintiffs simply because third parties ... may have a right to title of the property"). Thus, in this action to quiet title brought by Appellants, [the defendants] were only required to negate Appellants' contentions that Appellants had a right to title in the land.
>
> Appellants' citation to Maui Land & Pineapple for the proposition that the movant is required to show prima facie evidence of title to the land in dispute is misapplied. That case actually states, "In an action to quiet title, the burden is on the plaintiff to prove title in and to the land in dispute, and, absent such proof, it is unnecessary for the defendant to make any showing." Thus, Maui Land & Pineapple actually contradicts Appellants' argument. As plaintiffs in the underlying quiet title action, Appellants were required to prove their right to title in Hilea Nui.

Id. at 267-68, 172 P.3d at 1011-12 (some citations and emphasis omitted).

In contrast, in the case at bar, in its June 8, 2005 motion, A&B was not seeking summary judgment on its claim to

title.  Instead, A&B was seeking to demonstrate that there were no genuine issues of material fact concerning whether Silva has any interest in the subject properties.

Under Hawai'i law, partial summary judgment is authorized under HRCP Rule 56(a), which provides that "[a] party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof."  (Emphasis added.)  Thus, a party can file a motion for summary judgment for "any part" of a claim under HRCP Rule 56(a).  The aforementioned quiet title cases do not hold that a plaintiff must prove title before filing a motion for partial summary judgment asking the court to find that a particular defendant has no interest in the subject property. Indeed, the supreme court has held:  "The function of a motion for summary judgment is to determine whether an issue set forth in the pleadings is in fact in dispute and, if not, to eliminate any portion of the case for which trial is not required." Hawaii Prince Hotel Waikiki Corp. v. City & County of Honolulu, 89 Hawai'i 381, 974 P.2d 21 (1999) (citing J. FRIEDENTHAL, M. KANE & A. MILLER, CIVIL PROCEDURE:  SUMMARY JUDGMENT § 9.1, at 433 (1985)).

Accordingly, we reject Silva's argument that it is improper for a quiet title plaintiff to seek partial summary judgment on the issue of whether a particular defendant has an interest in the subject property without the plaintiff first establishing its prima facie claim to title.  Quiet title plaintiffs, like any other claimant, may use the procedure set forth in HRCP Rule 56(a) to eliminate any portion of the case for which trial is not required, including the elimination of any defendant-claimant whose claim to an interest in the subject property is without sufficient evidentiary support to create a genuine issue of material fact.  The elimination of such claims does not entitle the quiet title plaintiff to judgment in its

favor. Whether, in this case, A&B met its burden as movant on its partial summary motion is an entirely separate question.

2. A&B's Request for Summary Judgment

It is well-settled that the party moving for summary judgment has the burden "to show the absence of any genuine issue as to all material facts, which, under applicable principles of substantive law, entitles the moving party to judgment as a matter of law." Jou v. Dai-Tokyo Royal State Ins. Co., 116 Hawai'i 159, 164, 172 P.3d 471, 476 (2007) (citation omitted). That burden has two components:

> First, the moving party has the burden of producing support for its claim that: (1) no genuine issue of material facts exists with respect to the essential elements of the claim or defense which the motion seeks to establish or which the motion questions; and (2) based on the undisputed facts, it is entitled to summary judgment as a matter of law. Only when the moving party satisfies its initial burden of production does the burden shift to the non-moving party to respond to the motion for summary judgment and demonstrate specific facts, as opposed to general allegations, that present a genuine issue worthy of trial.
> Second, the moving party bears the ultimate burden of persuasion. This burden always remains with the moving party and requires the moving party to convince the court that no genuine issue of material fact exists and that the moving part is entitled to summary judgment as a matter of law.

Id. (citation omitted). Furthermore, "[t]he evidentiary standard required of a moving party in meeting its burden on a summary judgment motion depends on whether the moving party will have the burden of proof on the issue at trial." Omerod, 116 Hawai'i at 267, 172 P.3d at 1011.

Thus, a quiet title plaintiff-movant is not required, in every instance, to put on a prima facie case demonstrating its own interest in the subject property; but, as the party who will have the burden of proof at trial to show that it has superior title, the plaintiff-movant does bear the burden of production in showing that there is no genuine issue of material fact regarding the defendant-claimant's interest, as well as the ultimate burden of persuasion on the issue.

16

We first consider A&B's June 8, 2005 motion as it pertains to Parcel 18. In the Complaint, A&B alleged and averred that Parcel 18 constituted the land described in Land Commission Award 5448. The only evidence in support of its partial summary judgment motion, the affidavit of Uahinui, referred exclusively to Land Commission Award No. 4766, and not to Land Commission Award No. 5448. There was no evidence in the record before the court on the partial summary judgment motion tending to support A&B's alleged interest or to negate Silva's alleged interest in Parcel 18. Thus, A&B failed to satisfy its initial burden of production with regard to Silva's alleged interest in Parcel 18. The burden never shifted to Silva with regard to Silva's alleged interest in Parcel 18.[11] Accordingly, the Circuit Court erred in granting A&B's request for partial summary judgment with respect to Parcel 18.

Next, we consider A&B's June 8, 2005 motion as it pertains to Parcel 11. As reported above, the affidavit of Uahinui states in its entirety:

1.  I am competent to testify to the matters contained herein, and I do so based upon my own personal knowledge. I am currently employed at Title Guaranty of Hawaii Incorporated where I work in the Historic Title Department whose primary objective is to research the chain of title to real property in Hawaii.

2.  Land Commission Award No. 4766, Apana 3, was issued to Nakaiewalu.

3.  By Partition Deed the land of Nakaiewalu was divided between the children of Oheohekuahiwi and Monimoni pursuant to a decision of Judge Jacob Hardy on February 24, 1883.

---

[11] It is not entirely clear from the record whether Silva is continuing to claim an interest in Parcel 18 because the Opposition addresses only Parcels 10 and 11. In his Answer, filed *pro se*, Silva appeared to assert an interest in all of the properties identified in the Complaint. As A&B failed to carry its initial burden on its partial summary judgment motion against Silva with respect to Parcel 18, further proceedings regarding Parcel 18 are necessary.

In his Opposition and at the July 12, 2005 hearing, Silva objected to the admissibility of A&B's evidence, noting that no certified documents support any of Uahinui's assertions and that there were no stipulations that the assertions could be treated as admissible evidence under HRCP Rule 56(e).[12] While it appears that Silva's objections may have been well-founded, with the Opposition, Silva himself submitted copies of the documents referenced in Uahinui's affidavit, including Land Commission Award No. 4766 and the 1883 Partition Deed. In his Supplemental Opposition, Silva described those facts as undisputed. Thus, it appears that there were no genuine issues of material fact with respect to the statements in Uahinui's affidavit concerning the initial Land Commission Award No. 4766 and the 1883 partition.

Nevertheless, in his Opposition and Supplemental Opposition, Silva submitted copies of deeds, probate orders and minutes, marriage licenses, birth and death certificates, and other records in support of the following title history, which is taken from Silva's Opposition and Supplemental Opposition:

- In 1852, Nakaiewalu, received Land Commission Award No. 4766.

---

[12]  HRCP Rule 56(e) provides:

(e)  *Form of affidavits; further testimony; defense rquired.* Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

- In 1876, after Nakaiewalu died, his widow (Kapule) succeeded to Nakaiewalu's interest pursuant to his Will.

- In 1883, Land Commission Award No. 4766 was partitioned into five parcels alloted to the three children of Oheohekuahiwi (Kuheleloa (Lot 1), Keoua (Lot 2), and Koleka (Lot 3)) and the two children of Monimoni (Kalawa (Lot 4) and Pupuka (Lot 5)). (Lots 1 and 2 appear to now make up portions of Parcel 11.)

- In 1895, Keona [sic] conveyed a "2/5" interest in Land Commission Award No. 4766 to A.K. Mika. Silva asserts that the 1895 Deed's reference to Keona was an error and Keona was the same person described as Keoua in the 1883 Partition Deed. Silva acknowledges that it is unclear how Keoua would have acquired a 2/5 interest, given that he only acquired Lot 2 in the 1883 Partition Deed.

From the point of conveyance to A.K. Mika, Silva claims title to Parcel 11 through two sources: (a) through Wahinealoha Keo, and (b) through Kauhane Mika.

Silva's claim through Wahinealoha Keo:

- In 1916, Mary Rose Nakai, claiming to be the daughter and heir of A.K. Mika, conveyed by deed A.K. Mika's interest in Land Commission Award No. 4766 to Wahinealoha Keo.

- By deed dated February 25, 1931, Wahinealoha Keo conveyed the land received from Mary Rose Nakai to Eva Kaiu. However, on August 17, 1931, Wahinealoha Keo purportedly conveyed that same interest by deed to William K. Waialeale.

- On August 17, 1931, William K. Waialeale and his wife, Edith Waialeale, conveyed Lot 1 and Lot 2 of Land Commission Award No. 4766 to Annie Kona.

- Silva then claimed title to Parcel 11 through inheritance, identifying himself as a lineal descendant of Annie Kona. Silva's claim to title through inheritance is summarized as follows: Annie Kona (formerly Antonia Pacheco), who married Joe Pila Kona, had seven children -- Stella, Flora, Mabel, Antone, Dorothy, Fred and Lily. Stella Kona, who married John Costa Rita, Jr., was survived by issue upon death. One

19

of Stella Kona's surviving children was Bernice Cecelia Rita, the mother of Silva.

Silva's claim through Kauhane Mika:

- In 1912, the wife of R.K. Mika, died. Her name was Kauhane Nakai Mika. Probate testimony given by Mary Rose Nakai and Francis Nakai indicated that Kauhane Nakai Mika left no issue or spouse, but had five nephews (children of deceased brother Joseph Nakai) and that she owned a parcel of land containing 3 acres, 1 rood and 24 perches, which Silva represents is the same area as that of the subject kuleana.

- In 1913, the administrator of Kauhane Mika's estate declared that the inventory of her estate included real property described as 3 acres Kula land in Koloa, Kauai. Sworn testimony of a creditor and a nephew stated that the land owned by Kauhane Mika was leased to a Wahiawa plantation. Silva asked the court to take "judicial notice" that A&B's predecessor, McBryde Sugar Company, operated a sugar plantation at Wahiawa. Silva maintains that Kauhane Mika's nephews were determined to be her heirs, including Luka Nakai, aka Liebert Nakai. Although a petition for letters of administration filed in the Probate Court identified Mary Rose Nakai (decedent's sister-in-law) as an heir, it appears that under applicable law, title to any property owned by Kauhane Mika passed to her nephews only.[13]/

- In 1929, the administrator of Luka, aka Liebert, Nakai's estate declared that he died owning "2/5" of the subject kuleana with an area of 1 acre and 1 rood (1.25 acres), leaving two children, George Nakai and Mabel Nakai (Mrs. Kusan Ah Nee).

- In 1931, George Nakai delivered a deed to Annie Kona for "Lots 1 and 2, at Poeleele, Koloa. . . L.C.A. 4766 . . . and being the properties and lands popularly and commonly known as the 'Mary Rose Nakai Property[,]' the

---

[13]     Silva cited to Revised Laws of Hawaii § 3246 (1915), which provided, in relevant part:

> If the intestate be a woman, and . . . if she shall leave no issue, nor father, nor mother, her estate shall descend one-half to her husband and the other half to her brothers and sisters, and to the children of any brother or sister by right of representation.

same being inherited by the said Grantor from his father Libert Nakai." As reported above, Silva maintains that he is the lineal descendant and heir of Annie Kona.

● Similarly, on July 3, 1931, Kusan Ah Nee, Jr. delivered a deed to Edith Waialeale for land inherited from his wife Mabel, described in the deed as "Land at Poeleele, Lots 1 and 2, L.C.A. 4766 . . . containing an area 1.25 acres." On July 9, 1931, Edith Waialeale executed a deed conveying the "Land at Poeleele, Lots 1 and 2, L.C.A. 4766 . . . containing an area 1.25 acres" to Annie Kona.

Silva tacitly admits that there are flaws and/or gaps in his chain of paper title, but maintains that, along with the probate court testimony concerning Kauhane Nakai Mika's lease to a sugar plantation purported to be A&B's predecessor-in-interest, he offered compelling evidence to support his claim of title to Parcel 11.

A&B again submitted no evidence in support of its own claim of title with its reply to Silva's Opposition and Supplemental Opposition. Instead, A&B asserted that Silva's claim to title is "fatally flawed" because Silva does not have an unbroken chain of paper title and does not make a claim of title by adverse possession.

We reject A&B's contention that it was Silva's burden to prove *perfect* title in order to defeat A&B's motion for partial summary judgment. See, e.g., Maui Land & Pineapple, 76 Hawai'i at 408, 879 P.2d at 513. Indeed, the supreme court has often stated that, on a motion for summary judgment:

> [t]he evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion.

Querubin v. Thronas, 107 Hawai'i 48, 56, 109 P.3d 689, 697 (2005) (quoting Durette v. Aloha Plastic Recycling, Inc., 105 Hawai'i 490, 501, 100 P.3d 60, 71 (2004)).

21

Viewing all of the evidence and the inferences therefrom in the light most favorable to Silva, Silva presented a genuine issue of material fact worthy of trial concerning his claim to title in Parcel 11.  Accordingly, we conclude that the Circuit Court erred in granting A&B's June 8, 2005 motion for partial summary judgment against Silva with respect to Parcel 11.

C.    A&B's Further Evidentiary Argument

In its Answering Brief, A&B argues that there are "several key facts which are fatal" to both of Silva's alleged claims to title.  A&B fails to provide *any* record citations for the factual assertions in support of this argument.  A&B provides no elaboration of which documents it is relying on, which party submitted them, or when they were submitted to the Circuit Court.  Indeed, A&B's assertions seem irreconcilable with the record.  For example, A&B asserts that Silva alleges that Liebert Nakai inherited title from his mother, Mary Rose Nakai, and that prior to her death, Mary Rose Nakai conveyed her interest through Warranty Deed;[14/] therefore, Silva could not inherit any interest from Mary Rose Nakai.  However, it appears that Silva's argument is that Liebert Nakai inherited his interest from Kauhane Mika, and not Mary Rose Nakai.  This court is not obligated to sift through every document in the record to try to verify A&B's assertions.  Cf. Lanai Co., Inc. v. Land Use Comm'n, 105 Hawai'i 296, 309 n.31, 97 P.3d 372, 385 n.31 (2004) (court not obligated to sift through voluminous record to verify an appellant's inadequately documented contentions).

Finally, A&B argues that it was required to establish its title and did so; therefore, the outcome of the litigation would be the same regardless of whether A&B's motion against

---

[14]    Nor does A&B specify what interest in what property was purportedly conveyed by Mary Rose Nakai, to whom it was conveyed, or when the conveyance took place.  Although we could deduce that A&B is referring to the conveyance described by Silva in his Wahinealoha source line, A&B's argument is unclear and is not sufficient for us to conclude that A&B carried its burden of persuasion on the June 8, 2005 motion for partial summary judgment.

Silva was granted. Apparently – although there is no elaboration or record citation or detail to support this proposition – A&B is referring to the fact that the Circuit Court later granted A&B's affirmative motion for summary judgment on its quiet title claims to Parcels 11 and 18, after Silva and the other defendant-claimants' claims had been summarily adjudicated. A&B cites no authority for the proposition that this appellate court should consider evidence that A&B could have, but did not, submit in support of its June 8, 2005 motion for partial summary judgment against Silva. Moreover, in light of our determination that the Circuit Court erred in granting partial summary judgment against Silva, whether A&B's evidence of title is *superior* to the evidence of title brought forward by Silva appears to involve a determination of disputed material facts that is not susceptible to summary adjudication.[15]/

V. CONCLUSION

For the foregoing reasons, we vacate the Circuit Court's April 20, 2007 Amended Judgment inasmuch as it enters judgment in favor of A&B and against Silva, and we remand this case for further proceedings.

---

[15] It is not inconceivable that, on remand, this case could be decided based upon further summary judgment proceedings. See, e.g., Weeks, 70 Haw. at 397-99, 772 P.2d at 1190-92 (counterclaim seeking to collaterally attack probate court's order of distribution could not be attacked, as a matter of law); see also, e.g., Omerod, 116 Hawaiʻi at 266, 172 P.3d at 1010 (appellants were collaterally estopped from claiming an interest in the subject property as a matter of law based on prior decision of the Boundary Commission).

DATED:   Honolulu, Hawai'i, January 11, 2011.

On the briefs:

Thomas D. Yano and
Michael J. Matsukawa
for Defendant-Appellant

Michael W. Gibson
for Plaintiff-Appellee

NO. 28556; OPINION

ALEXANDER & BALDWIN, INC., a Hawai'i Corporation, Plaintiff-Appellee, v. KEITH
A. SILVA, Defendant-Appellant,and HONOLU'U; KAUKAHI; NAHINU; KENOI; MAHIAI;
LUI MALO;KAMAKA KALA; KEAU; KEAO; KEKUEWA; ROBERT KALALUHI;(except Pualani
Naehu), THOMAS KALALUHI; PETER KALALUHI(except Leialoha Kalaluhi); MITCHEL
KALALUHI (except Nohealeimano Vaughn); KUHELELOA; A.K. MIKA (except Mary Rose
Nakai); STATE OF HAWAI'I; OFFICE OF HAWAIIAN AFFAIRS; KUKUIULA DEVELOPMENT
COMPANY (HAWAII) LLC;or their heirs and assignees; and JOHN DOES 1-50,JANE
DOES 1-50, DOE CORPORATION 1-50; DOE PARTNERSHIPS 1-50 and DOE ENTITIES 1-50,
Defendants